IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN L. KIRKLAND, and THE KIRKLAND ORGANIZATION, INC.,<br><br>Defendants. | CIVIL ACTION FILE<br><br>NO. 1:13-CV-3150-MHC |

## ORDER

This case comes before the Court on the Securities and Exchange Commission's ("SEC") Motion for Summary Judgment and to Order a Civil Penalty Against Defendant Stephen L. Kirkland [Doc. 25] and Motion for Default Judgment Against Defendant The Kirkland Organization, Inc. [Doc. 22].

### I.  BACKGROUND

On September 23, 2013, the SEC filed a complaint against Defendants alleging that they engaged in violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, and Sections 206(1) and (2) of the Investment

Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-6 (1), (2).[1] Compl. [Doc. 1] ¶¶ 3, 21-30. Specifically, the Complaint alleges that between late 2008 and late 2010, Stephen L. Kirkland ("Kirkland") and The Kirkland Organization, Inc. ("TKO") repeatedly made false and misleading statements to investors and potential investors including: (a) representing that if they invested with Defendants through an account managed by a company called Westover Energy Trading Partners, LLC ("Westover"), there would be no risk of losing their principal; (b) representing that they would earn 2% to 3% per month; (c) representing that a specified New York real estate developer/owner would assist in managing their investments; and (d) representing that the New York real estate developer/owner's substantial wealth would also be used to indemnify investors against loss. Id. ¶¶ 1, 11-15. Based on those false representations, Defendants raised over $800,000 from investors in the United States and Great Britain. Id. ¶¶ 2, 18.

---

[1] At the outset, the Court notes that it views the evidence presented by the parties in the light most favorable to Defendant, the non-movant. Matshushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Sunbeam TV Corp. v. Nielsen Media Research, Inc., 711 F.3d 1264, 1270 (11th Cir. 2013). In addition, the Court has excluded assertions of facts by either party that are immaterial or presented as arguments or legal conclusions or any fact not supported by citation to evidence (including page or paragraph number). LR 56.1B(1), NDGa. Further, the Court accepts as admitted those facts in Plaintiff's statement of material facts that have not been specifically controverted with citation to the relevant portions of the record by Defendant Kirkland. LR 56.1B(2), NDGa. See Pl.'s Statement of Material Facts to Which No Genuine Issue Exists [Doc. 25-1].

On April 15, 2015, Defendant Kirkland executed a Consent to Order of Permanent Injunction and Other Relief. See Consent of Defendant Stephen L. Kirkland to Order of Permanent Inj. and Other Relief [Doc. 23] ("Kirkland Consent"). The Kirkland Consent memorializes Defendant Kirkland's consent to this Court's jurisdiction and to this Court's entry of an order permanently enjoining him from violating certain securities laws and providing for other relief. Id. ¶¶ 1-2. The proposed order was attached to the Kirkland Consent and incorporated by reference therein. See Id. ¶ 2. This Court entered the Order of Permanent Injunction as to Defendant Stephen L. Kirkland and Other Relief on April 15, 2015. See Order dated April 15, 2015 [Doc. 24] ("Injunction Order"). The Injunction Order, *inter alia*, permanently enjoins Defendant from violating Section 10(b) of the Exchange Act, and Sections 206(1) and (2) of the Advisers Act. Injunction Order at 2-4.

The Kirkland Consent and Injunction Order both specifically contemplate this Court's eventual issuance of an order imposing civil penalty against Defendant Kirkland. Kirkland Consent ¶ 3 ("Defendant agrees that the Court shall order a civil penalty pursuant to Section 21(d)(3) of the Exchange Act, and Sections 209(d) and (e) of the Advisers Act."); Injunction Order at 4-5 ("IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant Kirkland

3

shall pay a civil penalty pursuant to Section 21(d)(3) of the Exchange Act and Sections 209(d) and 209(e) of the Advisers Act."). The amount of the civil penalty to be instituted was left open at the time the Kirkland Consent was filed and the Injunction Order was entered, "to be resolved upon a motion of the Commission at a later date." Kirkland Consent ¶ 2(c); Injunction Order at 5 ("The Court shall determine the amounts of the civil penalty upon motion of the Commission at a later date."). Both the Kirkland Consent and Injunction Order contemplated that the SEC would file a motion for civil penalties and that in connection with that motion:

> (a) Defendant Kirkland will be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint; (b) Defendant Kirkland may not challenge the validity of the Consent or this Order of Permanent Injunction; but may challenge the appropriateness of the amount of the civil penalty to be ordered; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition testimony or sworn investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure.

Injunction Order at 5; see also Kirkland Consent ¶ 3.

## II.   LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.

4

R. CIV. P. 56(a). A party seeking summary judgment has the burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and cannot be made by the district court in considering whether to grant summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).

If a movant meets its burden, the party opposing summary judgment must present evidence that shows there is a genuine issue of material fact or that the movant is not entitled to judgment as a matter of law. Celotex, 477 U.S. at 324. In determining whether a genuine issue of material fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that opposing party. Anderson, 477 U.S. at 255; see also Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles.

Anderson, 477 U.S. at 248. A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Id. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita, 475 U.S. at 587.

### III.   ANALYSIS

#### A.   Liability

Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder prohibit the employment of manipulative and deceptive practices, including false statements of material facts, in connection with the purchase and sale of any security. Liberty Nat'l Ins. Holding Co. v. Charter Co., 734 F.2d 545, 553 (11th Cir. 1984). Similarly, Sections 206(1) and (2) of the Advisers Act make it unlawful for an investment adviser to defraud any client or prospective client or to engage in any transaction which operates as a fraud or deceit upon any client or prospective client. See SEC v. Mannion, 789 F. Supp. 2d 1321, 1339 (N.D. Ga. 2011).

The Kirkland Consent and Injunction Order make clear that, for the purposes of the SEC's Motion for Summary Judgment, Defendant is "precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint," and that "the allegations of the Complaint shall be accepted as and deemed true by the Court."[2] Injunction Order at 5; Kirkland Consent ¶ 3. The allegations of the Complaint detail Defendant Kirkland's violations of Section 10(b) of the Exchange Act and Sections 206(1) and (2) of the Advisers Act. Specifically, Defendant Kirkland solicited investors based on representations that his investment program supposedly was run by Westover and would earn returns of 2% to 3% on a monthly basis. Compl. ¶ 1, 11. Defendant Kirkland represented

---

[2] Defendant Kirkland, proceeding *pro se*, questions the "carte blanche" application of the admission of the allegations in the Complaint to anything other than the permanent injunction against violating securities laws. Def.'s Resp. in Opp'n to Pl.'s Mot. for Summ. J. [Doc. 26] ("Def.'s Opp'n") ¶ 3. However, Defendant Kirkland has not presented any evidence or argument that the Kirkland Consent was not entered into freely and voluntarily. Moreover, he has not presented any legal reason why the plain and unambiguous terms of those documents should not be enforced. Instead, he simply argues that it is only after the execution of the Kirkland Consent (and Plaintiff's filing of the present Motion for Summary Judgment) that he realizes the import of the language in the Kirkland Consent. Id. ¶ 1. Moreover, in the same brief questioning the application of the admission of the allegations, Defendant Kirkland "acknowledges that a civil penalty may be imposed as Defendant generally acknowledges that this Honorable Court may craft a penalty for relief in essentially any manner the Court deems appropriate." Id. ¶ 9. Defendant Kirkland must comply with the terms of the Kirkland Consent and of the Injunction Order.

7

that the company he operated (TKO) would reimburse investors for losses up to $5,000 incurred in a single trading day and that Westover would reimburse them for any losses that exceeded $5,000 on any trading day. Id. ¶ 12. Further, Defendant Kirkland represented that investors' principal would be protected by the "the substantial credit worthiness of the principals of Westover." Compl. ¶ 13. Defendant Kirkland also represented that a specific New York real estate developer was a principal of Westover and he would "impart[] his knowledge and expertise and lend[] his financial support, as well as the benefit of his numerous real estate industry and financial market connections." Id. ¶ 14.

These representations were false. The named New York real estate developer was not a principal of Westover, nor a part of Defendant Kirkland's investment scheme. Id. ¶ 16. There was never any sort of guarantee on investment from Westover. Id. ¶ 17. Defendant Kirkland does not dispute these facts and they are corroborated by the evidence presented by Plaintiff: namely, the deposition testimony of Robin S. Klamfoth taken February 20, 2014 [Doc. 25-2], the deposition testimony of Samuel L. Sykes taken March 20, 2014 [Doc. 25-6], and the Declaration of William S. Dixon dated April 20, 2015 [Doc. 25-7].

Given the undisputed facts, accepted and deemed true for the purposes of the present Motion for Summary Judgment, this Court finds that Defendant Kirkland

(1) knowingly, intentionally, or recklessly made untrue statements of material fact which operated as a fraud upon investors in violation of Section 10(b) of the Exchange Act; and (2) knowingly or recklessly engaged in practices which operated as a fraud upon clients in violation of Sections 206(1) and (2) of the Advisers Act.

Having found Defendant Kirkland violated the Exchange Act and Advisers Act, this Court has broad equitable discretion to fashion a remedy. See SEC v. Monterosso, 756 F.3d 1326, 1337-38 (11th Cir. 2014); SEC v. Lauer, 478 F. App'x, 550, 557 (11th Cir. 2012); Sargent v. Genesco, Inc., 458 F.2d 9, 10 (5th Cir. 1972) (recognizing that "the District Court's broad equity power will be capable of fashioning an adequate remedy for any violation of the securities laws.").[3] In this case, the SEC seeks a civil penalty against Defendant Kirkland, but acknowledges that there is no factual basis for ordering disgorgement.

**B.     Civil Penalty**

Section 21(d)(3) of the Exchange Act and Section 21(e) of the Advisers Act authorize the SEC to seek and the court to impose civil monetary penalties

---

[3] The Eleventh Circuit has adopted as precedent the decisions of the former Fifth Circuit handed down before October 1, 1981, unless Eleventh Circuit en banc or Supreme Court decisions subsequently have considered the issue. Stein v. Reynolds Sec., Inc., 667 F.2d 33, 34 (11th Cir. 1982); Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

"[w]henever it shall appear to the Commission that any person has violated any provision of" the Exchange Act or Advisers Act. 15 U.S.C. § 78u(d)(3)(A); 15 U.S.C. § 80b-9(e)(1). Both the Exchange Act and Advisers Act have a three-tier range of maximum penalties that the district courts can impose, but the actual "amount of the penalty shall be determined by the court in light of the facts and circumstances [of the particular case]." 15 U.S.C. § 78u(d)(3)(B); 15 U.S.C. § 80b-9(e)(2).

First-tier penalties for each violation of the Exchange Act and Advisers Act (arising from conduct which occurred after 2005) carry with them a maximum penalty of the larger of the amount of ill-gotten gain or $6,500. 15 U.S.C. § 78u(d)(3)(B)(i); 15 U.S.C. § 80b-9(e)(2)(A).[4] If the violation of the Exchange Act or Advisers Act involves fraud, tier two penalties are available for the larger of the amount of ill-gotten gain or $60,000. 15 U.S.C. § 78u(d)(3)(B)(ii); 15 U.S.C. § 80b-9(e)(2)(B). Third-tier penalties apply when a defendant's conduct "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and the violation "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. §

---

[4] See 17 CFR 201.1003, Table III (providing the adjustment of the civil penalties for inflation).

78u(d)(3)(B)(iii); 15 U.S.C. § 80b-9(e)(2)(C). Under the third tier, the court may impose a penalty not to exceed the greater of $120,000 for each violation or the gross amount of pecuniary gain to the defendant as a result of the violation. Id. "Though the maximum penalty is set by statute on the basis of tier, the actual amount of the penalty is left up to the discretion of the district court." SEC v. Tourre, 4 F. Supp. 3d 579, 593 (S.D.N.Y. 2014). "In determining whether to award civil penalties, courts consider numerous factors, including the egregiousness of the violation, the isolated or repeated nature of the violations, the degree of scienter involved, whether the defendant concealed his trading, and the deterrent effect given the defendant's financial worth." SEC v. Miller, 744 F. Supp. 2d 1325, 1344 (N.D. Ga. 2010) (citing SEC v. Sargent, 329 F.3d 34, 42 (1st Cir. 2003)).

The Court finds that a civil penalty of $45,500 is appropriate in this case given the following facts: (1) there is evidence that Defendant Kirkland fraudulently induced at least seven investors or investor groups to join his scheme; (2) the evidence of Defendant Kirkland's conduct in violation of the securities laws is limited to one fraudulent scheme; (3) there is no evidence that any investor lost any money in Defendant Kirkland's fraudulent scheme; and (4) there is no evidence that Defendant Kirkland profited from his fraudulent scheme. Although

the parties did not present any evidence of Defendant Kirkland's financial condition, the Court notes that Defendant Kirkland filed for bankruptcy in 2012 and sworn evidence presented and relied upon in that case indicate a minimal net worth. See Statement of Financial Affairs filed by Stephen L. Kirkland on November 29, 2012, In re Stephen Lee Kirkland, 1:12-BK-71914 (N.D. Ga. Bkr.). In this light, the Court is satisfied that a $45,500 civil penalty will serve as a sufficient deterrent. As the Court's ultimate penalty can be supported without the need to decide whether second or third tier penalties are applicable, it is unnecessary for the Court to reach this question.

## IV. DEFAULT JUDGMENT

The SEC filed the Complaint in the above-styled lawsuit against Defendants, including Defendant TKO, on September 23, 2013. TKO was properly served with the Complaint on September 25, 2013. See Return of Service [Doc. 4]. Defendant TKO failed to plead or otherwise defend within the time set by the Federal Rules of Civil Procedure. Thus, on October 24, 2013, Plaintiff moved for the entry of default. Appl. to the Clerk for Entry of Default Against the Kirkland Organization, Inc. [Doc. 7]. The Clerk entered default against Defendant pursuant to Fed. R. Civ. P. 55(a) on October 24, 2013. Plaintiff filed its Motion for Default Judgment as to Defendant TKO on April 3, 2015.

A.     **Legal Standard**

If a defendant fails to plead or otherwise defend a lawsuit within the time required by Fed. R. Civ. P. 12(a)(1)(A), upon motion, the clerk must enter default against the defendant pursuant to Fed. R. Civ. P. 55(a).  A default constitutes admission of all well-pleaded factual allegations contained in the complaint, but is not considered an admission of facts that are not well-pleaded or conclusions of law.  Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1278 (11th Cir. 2005); Anheuser-Busch, Inc. v. Philpot, 317 F. 3d 1264, 1266 (11th Cir. 2003).  "A motion for the Court's entry of judgment by default is not granted as a matter of right, and in fact is judicially disfavored.  That is why [Rule] 55(b)(2) vests the Court with judicial discretion in determining whether the judgment should be entered."  Patray v. Nw. Publ'g, Inc., 931 F. Supp. 865, 868 (S.D. Ga. 1996) (internal footnote and citation omitted).  The Eleventh Circuit has instructed that "[e]ntry of judgment by default is a drastic remedy which should be used only in extreme situations" and that courts "must respect the usual preference that cases be heard on the merits rather than resorting to sanctions that deprive a litigant of his day in court."  Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1316-17 (11th Cir. 2002) (quoting Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir. 1985)).

A default judgment may be entered by the court only if the well-pleaded factual allegations of the complaint, which are deemed admitted by reason of default, provide a sufficient legal basis for such entry. Nishimatsu Constr. Co. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.  In short, despite occasional statements to the contrary, a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."). "The court must therefore examine the sufficiency of plaintiff's allegations to determine whether plaintiff is entitled to an entry of judgment by default." Fidelity & Deposit Co. of Md. v. Williams, 699 F. Supp. 897, 899 (N.D. Ga. 1988).

The Supreme Court has explained that the pleading standard of Rule 8 of the Federal Rules of Civil Procedure:

> does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotations omitted). "This analysis is equally applicable to a motion for default judgment." Edenfield v. Crib 4 Life, Inc., No. 6:13-CV-319-Orl-36KRS, 2014 U.S. Dist. LEXIS 46822, at *3 (M.D. Fla. Mar. 10, 2014) (citing De Lotta v. Dezenzo's Italian Rest., Inc.,

14

No. 6:08-CV-2033-Orl-22KRS, 2009 U.S. Dist. LEXIS 110257 (M.D. Fla. Nov. 24, 2009)).

### B.  Analysis

Pretermitting an analysis of Plaintiff's Motion for Default Judgment as to Defendant TKO, the Court notes that this entity was administratively dissolved on August 26, 2011, and is no longer in existence.  See Compl. ¶ 9.  Further, to the extent Plaintiff is seeking to enjoin TKO and extract civil penalties against TKO, the Court notes that the only individual who is alleged to have use this entity to further the underlying fraudulent scheme (Defendant Stephen L. Kirkland) has already been enjoined from violating federal securities laws "directly or indirectly," see Injunction Order at 2, and will have civil penalties imposed against him by virtue of this Order.  As such, the Court finds that any judgment against Defendant TKO would be futile.

### V.  CONCLUSION

For the foregoing reasons, the SEC's Motion for Summary Judgment and to Order a Civil Penalty Against Defendant Stephen L. Kirkland [Doc. 25] is **GRANTED**.  Defendant Stephen L. Kirkland shall pay civil penalties in the additional amount of $45,500.  It is **FURTHER ORDERED** that the SEC's Motion for Default Judgment Against Defendant The Kirkland Organization, Inc.

[Doc. 22] is **DENIED AS FUTILE**.  The Clerk is **DIRECTED** to **CLOSE** this case.

**IT IS SO ORDERED** this 2nd day of October, 2015.

_____
MARK H. COHEN
United States District Judge